## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

RICHARD ROEBEN                                      PLAINTIFF/COUNTER-DEFENDANT

v.                                   NO. 4:06CV01643 JLH

BG EXCELSIOR LIMITED PARTNERSHIP
d/b/a THE PEABODY LITTLE ROCK,                                      DEFENDANTS/
TIM SNEED and KERRY SNELLGROVE                             COUNTER-PLAINTIFFS

### OPINION AND ORDER

Richard Roeben formerly worked at The Peabody Hotel, which is owned by BG Excelsior Limited Partnership. He was fired. He has alleged that his firing was an act of age discrimination. He has also alleged that employees of BG Excelsior Limited Partnership defamed him. He alleges that employees have stated that he was fired for stealing, and he denies that he has stolen anything. BG Excelsior Limited Partnership has filed a counterclaim for conversion.

The issue presently before the Court is whether Roeben will be allowed to depose Claude Zobell. Zobell attended a deposition in this case on August 29, 2007. When Roeben's lawyer asked the lawyers to identify themselves, Zobell stated: "Well, I am a lawyer; but I'm not here in that capacity. I'm here as assistant vice president of the Peabody Hotel Group." Later in the day, Roeben's lawyer served Zobell with a subpoena duces tecum commanding him to appear at a deposition and to produce "all documents supporting BG's response to the EEOC and all documents supporting the counterclaim." Zobell had signed a letter to the EEOC during the EEOC proceedings that preceded this action.

BG Excelsior Limited Partnership filed a motion to quash the notice of deposition. The Court denied the motion. BG Excelsior Limited Partnership has now filed a motion for reconsideration.

BG Excelsior Limited Partnership relies on *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), for the proposition that Roeben cannot take Zobell's deposition unless he shows that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Id*. at 1327.

*Shelton* was an appeal from an order of a district court entering a default judgment against American Motors Corp. because of the repeated refusal of one of its in-house lawyers to answer questions at a deposition even after having been ordered by the court to answer those questions. The lawyer in that case, Rita Burns, was an in-house lawyer assigned specifically to that case as American Motors Corporation's supervising "in-house counsel." *Id*. at 1325. Burns was deposed, but she refused to answer several questions relating to the existence or nonexistence of certain documents and the contents of certain documents. The district court held that the information that Shelton sought was not protected by the attorney-client privilege or the work-product doctrine and that Burns's repeated refusals to answer warranted a default judgment on the issue of liability. *See Shelton v. American Motors Corp.*, 106 F.R.D. 490, 498 (W.D. Ark. 1985).

On appeal, the Eighth Circuit held "that in-house counsel's knowledge of the existence of the documents in these circumstances is protected by the work-product doctrine." *Shelton*, 805 F.2d at 1328. The court also held, "Because the information sought by the plaintiffs was protected as work product, we hold that the imposition of default judgment was erroneous." *Id*. at 1329. In addition to the court's holding on those two points, the court also stated:

> In recent years, the boundaries of discovery have steadily expanded, and it appears that the practice of taking the deposition of opposing counsel has become an increasingly popular vehicle of discovery. To be sure, the Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition. *See* Fed.R.Civ.P. 30(a) (a party may take the deposition of "any *person*"). We view

the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.

Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged, *see Hickman v. Taylor,* 329 U.S. 495, 513, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947) (it causes "the standards of the profession [to] suffer"), and recognized as disrupting the adversarial nature of our judicial system, *see id.* at 516, 67 S.Ct. at 396 (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions * * * on wits borrowed from the adversary."). Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, *see, e.g., Fireman's Fund Insurance Co. v. Superior Court,* 140 Cal.Rptr. 677, 679, 72 Cal.App.3d 786 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

This case does not present those limited circumstances. The record indicates that the information sought can be, and in some instances has been, obtained by means other than deposing in-house counsel Burns. The plaintiffs sought to determine whether AMC possessed documents concerning primarily "rollover" tests and "rollover" accidents involving AMC's Jeep CJ vehicles. Trial counsel for AMC indicated that it would be willing to answer these questions through the depositions of AMC officials who were not attorneys in its Litigation Department. Burns' Second Deposition Transcript at 44. AMC's trial counsel also indicated more than once that the documents about which counsel was inquiring had been previously produced. *E.g., id.* at 20 and 68. Indeed, plaintiffs' counsel indicated that he was asking Burns these questions to determine whether AMC had in fact truthfully and fully complied

3

> with his document requests and interrogatories. Burns testified and AMC's trial
> counsel stated, however, that to their knowledge AMC's discovery responses were
> complete.

*Id*. at 1327-28 (footnotes omitted).  Apparently, the court addressed the issue of whether it was

proper to depose Burns because the parties briefed their case as though that were the issue, even

though she had already been deposed and apparently had answered some of the questions posed to

her.  *Id*. at 1326.

Whether *dicta* or not, this Court considers these statements from the *Shelton* opinion as

binding authority.  The question is, do they apply to this case?  A lot of the discussion in the *Shelton*

opinion refers to the abusive discovery practice of forcing the opposing trial counsel to sit for a

deposition, and indeed the paragraph announcing the tripartite test upon which BG Excelsior Limited

Partnership relies opens with a reference to "opposing trial counsel."  *Id*. at 1327.  Nevertheless, the

Eighth Circuit applied that tripartite test to the issue of whether Burns could be deposed, even though

Burns was an in-house supervising attorney, not opposing trial counsel.  *Id*. at 1327-28.

Assuming that the Eighth Circuit's reference to "opposing trial counsel" was intended to

encompass an in-house supervising attorney, that still does not resolve the issue here.  Here, while

Zobell is a lawyer, he stated when he attended the deposition that he was not attending in his capacity

as a lawyer but in his capacity "as assistant vice president of the Peabody Hotel Group."  Despite his

statement at the deposition, BG Excelsior Limited Partnership argues that Zobell's "role in this case

is that of an in-house attorney providing legal advice and counsel to BG regarding Mr. Roeben's

claims while assisting outside counsel with the litigation."  BG Excelsior Limited Partnership goes

on to say that the mere fact that Zobell attended depositions on behalf of BG does not somehow

destroy the attorney-client privilege, which is of course true but not especially helpful because the

issue is whether the privilege applies not whether it has been waived by Zobell's attendance at a deposition.

The Court has no information regarding the scope of Zobell's duties as an assistant vice president and how those duties differ from his duties as a lawyer.  Zobell, himself, distinguishes between his two capacities and expressly stated that he was attending the August 29 deposition not as a lawyer but as an assistant vice president.  If Zobell had no job other than his position as assistant vice president, which is apparently a business executive position, Roeben could take his deposition simply by serving a notice of deposition, and Zobell would be required to assert any privilege on a question-by-question basis.  BG Excelsior Limited Partnership does not argue to the contrary.  On the other hand, under *Shelton*, if Zobell were only an in-house lawyer supervising trial counsel, Roeben would have to satisfy the tripartite test before being allowed to take Zobell's deposition. Roeben does not argue that he can satisfy that test.

The burden of establishing a privilege rests on the party claiming it.  *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 643 (S.D.N.Y. 1987).  The Court has no evidence from which it could conclude that Zobell's sole knowledge about this case was acquired in his capacity as a lawyer. Because the burden of establishing a privilege falls on BG Excelsior Limited Partnership and because the Court does not have evidence from which it can say that Zobell's sole involvement in this case is that of an in-house supervising attorney, the motion for reconsideration will be denied as to whether Zobell must sit for a deposition.  The Court is not saying that BG Excelsior Limited Partnership has waived the attorney-client privilege or the protection of the work-product doctrine as a result of Zobell's attending the August 29 deposition in his capacity as assistant vice president. The Court is saying that it does not have sufficient information upon which to conclude that any privilege or work-product protection applies in the first instance, not that a privilege would apply

but has been waived.  No privilege would bar Roeben from deposing an assistant vice president.
Because Zobell is an assistant vice president, which is a capacity that he distinguishes from his
capacity as a lawyer, he can be deposed.  He can of course assert any applicable privilege or
protection on a question-by-question basis, and if a dispute arises regarding whether the privilege
applies, the Court will rule on a question-by-question basis.

BG Excelsior Limited Partnership also notes in its motion for reconsideration that the Court's
original order did not address the part of its motion that moved to quash the subpoena duces tecum.
The appropriate way to obtain documents from a party is through requests for production of
documents served pursuant to Rule 34.  The subpoena duces tecum served on Zobell does not
comply with Rule 34.  BG Excelsior Limited Partnership should have 30 days from the date of a
Rule 34 request within which to produce the requested documents.  In response to a request made
pursuant to Rule 34, BG Excelsior Limited Partnership would be required to produce nonprivileged
documents and would be required to provide a privilege log with respect to any documents withheld
on the basis of privilege.  *See* FED. R. CIV. P. 26(b)(5).

BG Excelsior Limited Partnership's motion for reconsideration is DENIED IN PART and
GRANTED IN PART.  Document #62.

IT IS SO ORDERED this 10th day of October, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE